**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arthur William Gustafson, | No. CV-13-08165-PCT-NVW |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Arthur William Gustafson seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied him disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.  BACKGROUND**

   **A.  Factual Background**

Plaintiff was born in December 1954. He earned a B.S. degree in construction management and worked as a carpenter and in construction management. He had a lower lumbar laminectomy in 1982 and a cervical discectomy and fusion in 1999, which required further surgery in 2001 to remove the instrumentation. He alleges impairments

due to cervical degenerative disc disease, neuropathy of the upper extremities, cervical arthritis, and inflammatory demyelinating polyneuropathy.

### B. Procedural History

On March 18, 2009, Plaintiff applied for disability insurance benefits, alleging disability beginning January 1, 1999. On June 9, 2011, Plaintiff appeared and testified at a hearing before an ALJ. On July 11, 2011, the ALJ found that Plaintiff was not eligible for disability insurance benefits because Plaintiff was able to perform jobs that exist in significant numbers in the national economy despite having severe impairments of cervical degenerative disc disease, status post surgeries; neuropathy of the upper extremities; and arthritis. Upon review, the Appeals Council directed the ALJ to further consider Plaintiff's neuropathy of the upper extremities and its effects on Plaintiff's residual functional capacity, update medical records, and obtain vocational expert testimony if warranted by the expanded record.

On September 13, 2012, Plaintiff appeared with his attorney and testified at a second hearing before a different ALJ. A vocational expert also testified. On October 19, 2012, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On June 28, 2013, Plaintiff sought review by this Court.

## II. STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole

and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

**III.    FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2002, and that he had not engaged in substantial gainful activity from January 1, 1999, through his date last insured of

December 31, 2002.  At step two, the ALJ found that Plaintiff had the following severe impairments through the date last insured:  cervical degenerative disc disease, spondylosis, neural foraminal narrowing with nerve root impingement requiring discectomy and fusion and history of pseudoarthrosis with removal of instrumentation. At step three, the ALJ determined that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.

At step four, the ALJ found that, through the date last insured, Plaintiff:

> had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b).  The claimant must be able to sit or stand at will.  The claimant can frequently reach, handle, and finger.

The ALJ further found that Plaintiff was unable to perform any past relevant work through the date last insured.  At step five, the ALJ concluded that, through the date last insured, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.

## IV.   ANALYSIS

An issue Plaintiff identifies for review concerns the last date he met the insured status requirements of the Social Security Act.  Plaintiff contends that his date last insured is December 31, 2002, which is what the ALJ found.  Therefore, no error is found with regard to the date last insured.

### A.   Substantial Evidence Supports the ALJ's Residual Functional Capacity Assessment.

Plaintiff contends that the ALJ erred by disregarding his inability to use his upper extremities.  Plaintiff bore the burden of proving that his impairment was both severe, *i.e.*, significantly limited his physical ability to do basic work activities, and was expected to last for a continuous period of at least 12 months.  20 C.F.R. §§ 404.1520(c), 404.1509.  Further, he had to show that the severe impairment existed from the beginning of his alleged disability, January 1, 1999, through the date he was last insured,

December 31, 2002. Substantial evidence supported the ALJ's determination that, through the date last insured, Plaintiff could frequently (*i.e.*, not constantly) reach, handle, and finger, and otherwise perform light work that permitted sitting or standing at will. The record shows that Plaintiff had cervical disc fusion surgery in April 1999 and revision surgery in October 2001, but it does not show that Plaintiff's physical ability to do basic work activities was significantly limited for a continuous period of at least 12 months.

In January 1999, Plaintiff was diagnosed with ruptured cervical discs at C6-7. In April 1999, he underwent anterior cervical discectomy and fusion with allograft bone at C4-5, C5-6, and C6-7, and anterior plating at C4 to C7. Records indicate the surgery was generally successful in relieving symptoms. In June 1999, Plaintiff reported to his primary care physician that he no longer had the tingling in his fingers, but still had some discomfort along the paracervical musculature. Examination showed good grip in both hands and good range of motion of the neck. In September 1999, Plaintiff reported "some pain" in his hands, which he thought to be arthritis, "some discomfort" in his left shoulder blade, and neuropathy of the left arm. In December 1999, Plaintiff reported significant neck pain and "some neuropathy in the arms" and was prescribed Celebrex, a nonsteroidal anti-inflammatory drug used to treat pain or inflammation. In July 2000, Plaintiff reported to his primary care physician that his fatigue had improved, he liked to exercise, and he became slightly short of breath with vigorous exercise. In October 2000, Plaintiff reported that "he has learned to live with some of the aches and pains of his neck and shoulders." The record shows no evidence of treatment by a specialist in 2000.

On April 6, 2001, Plaintiff began seeing a different primary care physician and reported ongoing neck pain with bilateral radicular symptoms, which had increased over the previous six months. The physical examination showed "some definite tenderness" in his neck, subjective paresthesias bilaterally, and no overt weakness.

On April 17, 2001, Plaintiff returned to his orthopedic surgeon, who described Plaintiff as "having done remarkably well until recently" and reporting a "recent onset"

of sharp pain when rotating his head to the right or left. Treatment notes state that Plaintiff "continues to work hard, in fact, spending hours leaning forward over his hobby and work." Upon examination, the surgeon found Plaintiff had full range of motion of the neck, "a little bit of radiating numbness and tingling . . . affecting the left arm into the fourth and fifth digits," "no clear weakness," a negative Lhermitte's sign (nerve pain from neck movement), and a negative Spurling's test (nerve root impingement). Recent plain x-rays and a cervical MRI scan showed no signs of significant cord compression, no overt foraminal narrowing at the C6-7 or C7-T1 levels, and "excellent fusion at the operated level." However, the surgeon was concerned regarding Plaintiff's ongoing symptoms and ordered further testing. Subsequent x-rays showed fracturing of two inferior screws in the fusion hardware.

On October 11, 2001, Plaintiff underwent revision surgery to remove the cervical instrumentation. No pseudoarthrosis (*i.e.*, incomplete healing of the bones previously fused) was identified at the time of surgery. On October 29, 2001, Plaintiff saw an endocrinologist for his hypothyroidism, who noted that Plaintiff reported "a lot of joint pains" and "his neck, shoulders, and hands bother him," but he had "no pain in the neck or difficulty swallowing" and did not appear to be in any acute or chronic distress. The physical examination showed peripheral pulses were intact and reflexes in the lower extremities were diminished.

In July 2002, a comprehensive physical examination showed no abnormal findings related to Plaintiff's neck or back. Plaintiff reported frequent neck pain and occasional headaches, shoulder pain, severe back pain, muscle/joint problems due to exercise, joint problems not due to exercise, and numbness. His response to "physically handicapped/limited" was "no." When asked for a brief description of his job and daily activities, Plaintiff reported "a lot of walking, working with hands—construction." Regarding how much he exercised, he selected the response "All I need" rather than "Little or none" or "Less than I need."

The ALJ not only considered the evidence of record from the beginning of Plaintiff's alleged disability, January 1, 1999, through the date he was last insured, December 31, 2002, but also considered records after December 31, 2002, to determine their applicability to the relevant period.  The ALJ also considered Plaintiff's testimony regarding alleged neck and back pain and his daily activities, but found inconsistencies indicating that Plaintiff's 2012 testimony regarding his symptoms and daily activities during 1999-2002 was unreliable.  The ALJ acknowledged that "it would be difficult for anyone to recall, with absolute certainty, the symptoms he or she experienced more than a decade earlier."

The ALJ considered the evidence of record in a light most favorable to Plaintiff when she determined that, during the relevant period, he was limited to performing light work that permitted him to sit or stand at will, thus enabling him to shift positions as needed, and did not require constant reaching, handling, and fingering.  Substantial evidence supports the ALJ's conclusion that Plaintiff was able to use his upper extremities, with the limitations identified in the residual functional capacity assessment, from January 1, 1999, through December 31, 2002.

> **B. Substantial Evidence Supports the ALJ's Determination that, Through the Date Last Insured, Plaintiff Did Not Have an Impairment or Combination of Impairments that Met or Medically Equaled the Severity of One of the Listed Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.**

Plaintiff contends that the ALJ erred by finding that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled Listing 1.04(A).  To meet the requirements of a listing, a claimant must have a medically determinable impairment that satisfies all of the criteria in the listing. 20 C.F.R. § 404.1525(d).  If a claimant has a combination of impairments, no one of which meets a listing, the combination may be found to be medically equivalent to a closely analogous listing if the claimant's combination of impairments is at least equal in

severity and duration as those required for the analogous listing. 20 C.F.R. § 404.1526(a), (b)(3).

Listing 1.00(B)(2)(a) defines functional loss as the inability to ambulate effectively or perform fine and gross movements effectively on a sustained basis for any reason, including pain. Under Listing 1.00(B)(2)(c),

> Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities, i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

Listing 1.04(A) requires a disorder of the spine, such as degenerative disc disease, resulting in the compromise of a nerve root or the spinal cord, with evidence of "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."

The ALJ expressly considered whether Plaintiff had, through the date last insured, an impairment or combination of impairments that met or medically equaled Listing 1.04(A). The ALJ found the evidence of record confirmed that before his April 1999 surgery Plaintiff had degenerative disc changes in his spine, including mild degenerative disc disease and broad-based osteophyte formations at C4-5, C5-6, and C6-7 with "some central canal compromise and anterior flattening of the spinal cord," but the record did not confirm a resulting compromise of the nerve root sufficient to meet or medically equal Listing 1.04A. The ALJ also found that before the surgery Plaintiff had some motor loss and pain with cervical extension, but he had full range of motion of the spine.

The ALJ found that the record showed that after the April 1999 surgery Plaintiff was doing well, and when the fractures in the fusion hardware were diagnosed in September 2001, Plaintiff had a normal gait, full range of motion, intact motor strength, and no atrophy. After the October 2001 revision surgery, Plaintiff appeared to be doing well. Thus, Plaintiff has not shown that his impairments or a combination of impairments met or medically equaled Listing 1.04(A) at any time during the relevant period, much less for 12 continuous months.

Therefore, substantial evidence supports the ALJ's determination that Plaintiff did not have an impairment that met or medically equaled Listing 1.04(A) for 12 continuous months. Further, substantial evidence does not support finding that Plaintiff had a combination of impairments that was medically equivalent to a closely analogous listing.

### C. Substantial Evidence Supports Finding that, Through the Date Last Insured, Plaintiff Could Have Performed Jobs Existing in Significant Numbers in the National Economy.

At step five, after having determined that Plaintiff's disabilities prevented him from doing his past relevant work, the ALJ was required to decide whether Plaintiff's impairments prevented him from performing other work that exists in the national economy, considering his residual functional capacity together with the "vocational factors" of age, education, and work experience. Social Security Policy Ruling ("SSR") 00-4p (12/4/00). Work is considered as existing in the national economy when both (1) its requirements can be met by the claimant with his or her physical or mental abilities and vocational qualifications, and (2) it exists in significant numbers either in the region where the claimant lives or in several other regions of the country. 20 C.F.R. § 404.1566(a), (b). The Commissioner will take administrative notice of reliable job information from various governmental and other publications and may use the services of a vocational expert or other specialist to determine whether a claimant's work skills can be used in other work and the specific occupations in which they can be used. 20 C.F.R. § 404.1566.

1    A vocational expert testified in this matter at the administrative hearing on September 13, 2012. He testified that a hypothetical person with the same age, education, and work history as Plaintiff, who could perform light work and frequent reaching, handling, and fingering, could perform the jobs of cashier, merchandise marker, and routing clerk. Based on his personal experience and consultation with colleagues, the vocational expert testified that at least 10 percent of the jobs of cashier, merchandise marker, and routing clerk could be done with a sit-stand option. The vocational expert testified regarding the amount of such jobs existing in Arizona and nationally. He further opined that there were a few jobs that required only occasional reaching, handling, and fingering, but they would not have a sit-stand option. Thus, the ALJ concluded that, through the date last insured, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.

Plaintiff contends that the ALJ erred in reaching this conclusion because the vocational expert was unable to identify any jobs limited to occasional reaching, handling, and fingering, plus a sit-stand option. Plaintiff further contends that the ALJ erred in reaching this conclusion because the vocational expert was unable to identify any jobs with a sit-stand option that could be performed by a hypothetical person with the same age, education, and work history as Plaintiff, who could perform only sedentary work, no lifting or carrying, and only occasional reaching, handling, and fingering. Because the evidence of record did not support a residual capacity assessment precluding frequent reaching, handling, and fingering, or one with the limitations of sedentary work, no lifting or carrying, and only occasional reaching, handling, and fingering, the ALJ was not required to conclude there were no jobs that Plaintiff could have performed through the date last insured.

///
///
///
///

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 28th day of April, 2014.

_____
Neil V. Wake
United States District Judge